The issue presented in this case is whether the admission of Mr. Ramos' wife's testimony at the trial, in clear violation of Crawford v. Washington, had a substantial and injurious effect upon the jury's determination of guilt. And in this case, the original ruling did find that the evidence was harmless. However, there was not any focus on the continuing criminal enterprise but simply a general statement about what the other evidence was. And I think in light of the impact of how the court must assess the testimony now under Crawford v. how it was assessed under Ohio v. Roberts, the court should revisit this issue in light of the watershed decision that Washington v. Crawford was and in light of the fact that a panel of this circuit has held that decision to be retroactive. But we previously said in that decision we did address your confrontation clause. The question was raised in that question, wasn't it? It was. But what was decided and what was the basis of the trial court's decision and the court's affirmance here was that there was a firmly established exception to the hearsay rule under Ohio v. Roberts which admitted they allowed for the admission of the evidence. And once that took place, there was no actual analysis of confrontation. But I think what should concern us is the ruling by our court that even if there was a confrontation clause problem, that it was harmless error. And I've told you why I think in light of the watershed decision that there was a confrontation clause problem, that it was harmless error. Well, you told us why you think that there's a confrontation clause question. But our prior panel assumed that even if there was a confrontation clause problem, that it was harmless error. Now, the harmless error standard hasn't been changed by Crawford v. Washington, has it? Well, we argue, Your Honor, that when you look at Crawford v. Washington, there's no specific discussion of harmless error there and that we would argue that it is the violation is a per se violation. But we also argue Wait, you're telling me that it's structural error? Structural. And so that any time we have any confrontation clause problem, then it must be reversed. That's our first argument that we presented to the court, Your Honor. And what evidence do you have for that? What cases will support that? The evidence we had, we pointed to the actual language that is in Crawford. And what is missing from that language is any discussion about harmless error. And we infer from that decision Right. But we have previously held We have previously held that there is a harmless error rule that attaches to the confrontation clause. Are you now suggesting that in light of Crawford that this panel can overrule our prior decisions? I'm not suggesting your panel. This panel can overrule that. Okay. Well, if we can't overrule prior panels that have said that there's a harmless error rule that attaches to the confrontation clause, then how do you get there? Because I don't think that it's I don't think that that is res judicata. I don't think that's What are you saying? We didn't say it was harmless last time? The panel said it was harmless error. Right. I don't dispute that fact. I don't think that's binding on this panel after Washington versus Crawford. It's not binding, but it is a finding by this court, right, that if it was error, then it was harmless. That's right. And that's what we have here. If it's error, it's harmless unless you, as you say, it's a structural error and you cannot find harmless error. Well, I think this Court has the jurisdiction to review the harmless error analysis in light of what happened in Crawford. That's my simple point. Well, if your argument, counsel, is that as a panel reviewing a prior decision in this same case, that we are not irrevocably bound by law of the case, you've got an uphill battle, but I think you've got some room to run. I think I just mixed my metaphors, but I hope you understood what I meant. But if that's the case, then I think you have to come up with something more than Crawford itself, because our prior panel assumed that there was a confrontation clause error, which Crawford simply would confirm. But our prior panel then said it's harmless error. But you don't have any change in the law since Crawford that would affect that analysis, do you? No, I don't, Your Honor. But if the Court thinks that I have room to run, can I run for a minute or two? Absolutely. I think, Your Honor, if the Court reaches the harmless error analysis, I think in this case, with regard to the continuing criminal enterprise count, which is count 2, the most serious count in the case, the admission of Mr. Ramos's wife's testimony from another trial in which she was presenting a defense of duress, which no one had a chance to cross-examine her at that trial, that the admission of that testimony would be error, and not just error, it's prejudicial. That if the Court looks at the litany of questions that Maria Reyes was asked, they virtually all went to the question of whether Mr. Ramos was the organizer, supervisor, or manager, which, of course, are an element of a continuing criminal enterprise and one of the things which distinguishes the CCE from a just general conspiracy. Each of the questions that she was asked shows that Mr. Ramos had control, that Mr. Ramos was the person obtaining the source of heroin on a regular basis, and outside of this kind of testimony that Maria gave, there was very little other testimony that would go to the elements of organizer, supervisor, or manager. There was some evidence of Mr. Ramos's participation in drug distribution, whether it arose to the point of being beyond a reasonable doubt with regard to the single ongoing conspiracy charged or not, that was a question that we argued to the jury. And the prosecution says there's more than ample evidence on this, right? It did. And that was actually brought up previously in the field, right? Yes. But I think, Your Honor, if you look at what the government cites to as the ample other evidence, we responded, we tried to respond to each of those items in our reply brief. And I think the government has overstated what that evidence was, and that really, when you look at it pretty clearly to me, is that Maria was the heart and soul of the government's case on the continuing criminal enterprise count. And I will reserve whatever's left from rebuttal unless there's any other questions. Thank you, Mr. Mazur. Thank you. Good morning. May it please the Court. My name is Louis Davis. I'm an assistant United States attorney in this district, and I was co-counsel in the matter below at trial in 1995. I'd like to begin first with our claim, and I believe from the Court's questions the Court endorses this, that this panel is bound by the earlier decision in this matter. In that opinion, Judges Bucciva, Reinhart, and Reimer ruled on the very identical issue that's being raised here by counsel, whether there was error in the admission of Maria in the testimony that was redacted, and if so, whether that error was harmless or not. The Court, on direct appeal, found that her testimony was insignificant when compared with the government's entire case against the Ramos trial defendants, and noted and found that the defendants faced testimony from informants, undercover agents, evidence of telephone activity, recorded telephone calls, runners, runner cars, and runner apartments. Quoting briefly from the opinion, in view of this overwhelming evidence, the small number of statements made by Reyes that may not have been primarily inculpatory did not affect the Ramos trial defendants' substantial rights, end of quote. And also, as the Court's already noted, the Court on direct appeal found that any error was harmless beyond a reasonable doubt under Chapman. We believe, for those reasons, the Court's bound by the earlier decision. In addition, since this claim was raised on direct appeal below, it cannot be the basis of a habeas here. But let me address the issues raised by counsel in his brief. The first issue is whether or not the Court has jurisdiction to consider this appeal. Our position is that the determination of retroactivity, which is one of the preconditions for the application of paragraph 6, subdivision 3, is a determination that should be made by the Supreme Court, not by any other court. We realize that there are other opinions holding that the decision may be made by any lower court, and the reason for our position is expressed most clearly in United States v. Dodd in the dissenting opinion filed by Justice Stevens. And what he noted there was that every court that has ruled that the retroactivity decision may be made by a lower court has done so based on the language contained in 28 U.S.C. section 2244B2A that contains the explicit requirement that a new rule, quote, made retroactive by the Supreme Court. And then the proponents of that view argue that since that same language is not included in paragraph 6, subdivision 3, it must evince an intent of Congress to allow lower courts to make the decision with respect to the application of paragraph 6, subdivision 3. Justice Stevens analyzes this and concludes that this is really a grammatical issue. And if you note, with respect to 2244B2A, there's only one verb that the prepositional phrase, quote, by the Supreme Court can modify, whereas in the subdivision before this court, there are two verbs, newly recognized and made retroactive. Is it your position that the petitioner must wait until the Supreme Court has held it to be retroactive and then he has a year within which to file? I believe that the petition does have to wait until the Supreme Court has made the right retroactive. However, Dodd holds that that period of time runs from the date that the instant decision articulated the new right, not the date on which the decision was made for the case to be retroactive. So you're talking about one year from the date Crawford was designed? That's correct, Your Honor. Did he not make the year here? Well, the defendant did file his petition one day short of a year. Why is that good? Our position, Your Honor, is that the decision as to retroactivity must be made by the Supreme Court, and that has not been done yet. Are you suggesting that we overrule the previous Ninth Circuit opinion? Well, you're referring to Bokting v. Bair, Your Honor? Yes. Our position is that that issue of who makes the retroactivity determination was not addressed by the court in Bokting. No, it wasn't, but it is a decision saying it's retroactive. So are we going to overrule it? Do you want us to go on bank to do that? Well, I recognize, Your Honor, that in order for the panel to overrule Bokting, it would have to be an en banc decision. Do you want us to do that? Well, I believe that the Supreme Court is the court that should make the retroactivity determination. Well, you can take it up to the Supreme Court. Yes, Your Honor. Let me move, if I may. Under your theory, the petitioner is just out of luck entirely. That's correct. And Dodd, with respect to the issue that it was addressing, made the same observation and concluded that the results could be harsh, but that that, in Dodd Court opinion, was what the Congress intended, and if harsh results were not the intention, that Congress should change the law. That's what Dodd said in the majority opinion. And you are, of course, inviting this court to go into conflict with five other circuits on this question. I understand that, Your Honor, and our only response to that is that we think that Justice made the basis that retroactivity determinations may be made by lower courts have done so based on the example I gave of the language of 22B4A. Sorry. Under 2244B2A. Let me move, if I may, to the issues with respect to harmless error. Counsel, of course, is correct that Crawford does not address the issue of harmless error. However, there's no indication from that that the harmless error standard has been repealed or revised or in any way altered, and we argue that the harmless error, in fact, is the standard. Cases both before Crawford and after Crawford have applied the harmless error standard. There's no indication that Crawford made any alteration in that standard. In addition, there are many cases in which the results of a confrontation error are arguably far more serious, and in those cases, the harmless error applied as well. Those were addressed at our brief at 31. Crawford doesn't suggest that there's any change in the Confrontation Clause issue. The court should apply it. With respect to the evidence, let me quickly point out that both Ramos' conduct as the head of the conspiracy as well as all the co-conspirators' conduct towards him indicate that he was, in fact, the chief, the head, the person that managed and ran the entire organization. A number of examples. When even a longtime purchaser wanted to buy more heroin than he was normally accustomed to buying, it was only Jesse, that is to say, Ramos, that could make the decision. When another buyer wanted to acquire a bonus of heroin because of the extra quantities he was buying, only Ramos could make that decision. When the first 12-gram purchase was made by Informant Munda, this is at SCR 114, Jesse, the defendant, was the one that had to bring the heroin himself because he didn't trust his own runners. When there was a decision that an undercover agent was to be introduced, and the informant asked for permission to do that, he was told that he would have to make another buy, and that was a decision made by the defendant. The defendant also asked one of the informants how many people was he going to introduce. He wanted to know the background of the people, and he wanted to know if they were reliable, which in his vernacular didn't mean if they were good people. It meant were they law enforcement or not. When one of the informants wanted to buy heroin quickly for a customer, it was the defendant that said, come near my house in Daly City, and I'll provide it for you. And one of the informants reported that when he was discussing the issue with the defendant's wife, Anna, who as the only bilingual speaker, both English and Spanish, was the one that translated conversations back and forth, she told him, the informant, that the only reason, the primary reason they would never get busted was because of Jesse's leadership ability. It was also the defendant that dealt with short-weighted packages, the delays in the arrival of runners, the issue regarding the quality of heroin, the buy locations and when they had to be changed. He was the one that offered a front to one of the informants. He was the one that provided a special location to meet with the informant when he needed heroin quickly. And it was also the defendant who nodded agreement to his brother at one narcotics transaction, signaling that it was okay to hand over the heroin to the buyer after the money had been delivered. That's at SCR 24. As this court decided on direct appeal, Ramos' guilt on the CCE conviction and all other charges for which he was convicted was predicated on a number of factors completely independent of Maria Reyes' testimony, which were not refuted by Ramos here. Primarily the 10 heroin buys. And for that reason, we believe the court should deny relief. Thank you. Thank you, Mr. Davis. Mr. Mazur, I believe you have a couple of minutes. Thank you very much, counsel. Thank you. We will next take up Gulledge v. Ryan.
judges: Noonan, Siler, Bybee